Number 191452, Photographic Illust'rs Corp. v. Orgill, Inc. Good morning, Your Honors, and may it please the Court. Charles Fowler for the Appellant, Photographic Illust'rs Corp., which I'll refer to as PIC. And with the Court's permission, I'll reserve three minutes for rebuttal. Yes. The District Court, v. Orgill, saw in judgment on the novel legal theory that it received an implied copyright sub-license to PIC's copyrighted photographs. We ask this Court to reverse for two reasons. First, an implied copyright sub-license is a legal impossibility. And second, even assuming that under basic contract principles, Orgill could have agreed with Sylvania for an implied, in fact, copyright sub-license, the record here does not support summary judgment for Orgill on that issue. And I'll address those two points in turn. Turning first to the legal possibility argument, I think the best starting point is this Court's most relevant precedence. Can I ask you to start with your second point? As to your first point, your client gave Sylvania the absolute right to use it, use the photographs for any purpose. So we may not have an implied at-loss sub-license at all. So I don't think that's your strongest argument. If you could turn to your second one and then come back to your first argument. Of course, Your Honor. So let me turn to the summary judgment record then. And I'll begin with the basic premise that Orgill, as the party who would have had the burden to prove an implied license at trial, had the burden of proof at the summary judgment stage as well. And as a result, Orgill would have needed to create such a summary judgment record that on the record, I'm sorry, I've asked you just to implicitly assume that there was an implied sub-license. As a matter of fact, not implied by law. All right. So then we're at summary judgment. What are the issues in dispute that you say the record shows there were disputed facts about? Yes, Your Honor. So the disputed issues, I think, are both Sylvania's intent to grant an implied in fact sub-license contract as well as Orgill's intent or assent to the terms of an implied in fact sub-license contract. And as several courts dealing with implied copyright sub-licenses have observed, it's basically similar to any other implied in fact contract requiring the mutual assent of both parties. And the record just does not negate a fact issue as to either party's assent here. And I'll begin with Sylvania's intent or assent to the terms of a sub-license. To start, as the district court observed on multiple occasions, there is simply no direct evidence in the record one way or the other addressing the question of Sylvania's intent or assent to the terms of a sub-license because Sylvania provided no testimony by deposition, affidavit, or otherwise. But here, let me stop you there because this is where I lost you in your briefs. I call you up and say, I'll help you sell your product. I'd like to sell your product all over the place. And you say, great, I'm retaining you to sell your product. And I say, send me some pictures of your product so I can use them to sell your product. And you send me the pictures. And I then use them to sell your product. And you would say a jury could then find that you didn't consent to me using your pictures to sell your product? That makes no sense. Well, for a couple of reasons, Your Honor. I think I'd press back on that a bit because I think the intent that the jury would have to find is not simply the intent that Orgill go and use the photos, but we're talking about assent to the terms of a contract here. So I think Serrani would actually need to intend to confer sub-licensing rights. Suppose they didn't even know. Suppose there was someone whose English wasn't their first language. They'd never heard the word sub-license in their life. They were clearly permitting, you were clearly, my example, you were clearly permitting me to use the photographs. And you, by the way, had a contract that expressly said you could permit me to use the photographs. Yes, Your Honor, but I think a couple of issues. For one, I don't think if the individual, in your hypothetical, for example, the individual who actually selected a photograph to send to Orgill and send it on to Orgill, if that individual had no idea that the photographs were subject to copyright and sent it along haphazardly, and by the way, the record shows that that is exactly what Sylvania did. Who cares if they knew that they were subject to copyright? They were given permission. That's your problem, if it turned out. And then I might have a claim against you for not having told me. The question is, could the jury reasonably find that I, the user of the photographs that you sent me, didn't have your permission to use them? I'm not hearing anything in those facts about whether you knew they were copyrighted or not, but somehow it would mean that you hadn't given me permission to use them. Your Honor, I'm drawing a distinction between intending, I guess I would say that Sylvania could seemingly grant permission. If Sylvania thinks it owns the photos or thinks it's got, you know, there's no third-party copyright or other intellectual property issues at all involved and passes the photos along without regard to those third-party rights, I do not think that action would be sufficient to imply by conduct assent to the terms of a copyright sub-license. So you think Sylvania, you think you, in my hypothetical, you could turn around and sue me for having sold, for having used the photos that you gave me without permission, causing you harm? I'm not sure I followed the... Sure. We're talking about whether a jury could find that you had permitted me to use the photos. That's the central issue. And if you're correct, then it would follow that you could sue me for having used those photos that I sent you when you asked me, when I asked you to use them, and I wouldn't, and a jury could find I didn't have permission.  When I told you what I was going to do, it was for your benefit. I asked them to send me the stuff. You sent me the stuff. I then notoriously used them in full view to you for years. I understand, Your Honor, and I think there's some evidence in the record from which the jury could draw the exact opposite inference. For example, I would draw... So it's the inference that I didn't have your permission. In that hypothetical.  You think a jury could say I didn't have your permission? At a minimum, Sylvania did not confer permission sufficient to convey a copyright sub-license. But we don't need a copyright sub-license, do we? We have a contract here between Pick and Sylvania, in which Pick said you've got our permission to sub-license or permit anyone you want in the world to use these. So, Your Honor, I think there's a little bit of a procedural issue here because the only ground that was ever raised in the district court... You aren't seriously going to argue that we have to ignore the clear, express, and subject to no ambiguity language of the contract, are you? How could we possibly do that? No, Your Honor, I don't think the court needs to ignore the language of the contract, but I don't think the language in the contract between Sylvania and Pick could possibly resolve the issue of whether or not there was a downstream transaction, which itself would have to satisfy all the elements of it. I'm sort of with Judge Kayada. I'm not sure what sub-licensing has to do with any of this. You get permission to use, whether it's through a sub-license, through anything else. I don't see the case as turning on sub-licenses, and I told you earlier I did not think your implied law argument has any place in this case, given the broad language of use. If you have a problem, it strikes me the problem was with Sylvania for not passing on to the people to whom it said, you can use our product, you have our permission, the fact that they should have included your photographer's name and copyright. But that's a problem with Sylvania. It's not a problem with Orgil. So, Your Honor, let me return to the point about permitting use, because I think it takes a little bit of an overbroad view of the way the case was defended below. The only issue or the sole ground that was raised by Orgil for summary judgment was that it had a sub-license. That was certainly the ground that we had notice of and responded to at the summary judgment stage. Yeah, we can affirm summary judgment on any ground raised in the record. I certainly don't think that they waive the use language. They talk about it all the time in their briefs. Certainly, Your Honor, they can argue that the definition in the contract of use is broad. I would note that the contract lists... And didn't the arbitrator find that? Well, the arbitrator found that certain other distributors of Sylvania products had sub-licenses, and that was the arbitrator's ruling as well. But I don't see how Orgil is able to avoid now having to establish, and frankly conclusively at the summary judgment stage, an implied-in-fact contract resulting in a sub-license. So I think if I hear what you're saying, and help me out with that, I think you're saying, well, permit may be a different issue, but permit wasn't the focus of the summary judgment proceedings before. It was just sub-license. And you therefore posit that it's possible that they had clear permission to use them, but they didn't have a sub-license. I'm not sure that's my position. I certainly think that if there was... And I understand the court can affirm on any grounds supported by the record, but the issue of whether Sylvania had a separate right to permit use that was somehow broader than or didn't require the elements of an implied-in-fact sub-license is not a ground that was argued or litigated below, nor one we had the opportunity to oppose. I don't think the result would be any different, but I don't think that's the matter before. But if we stick with you on that distinction, and we say they've got to justify a sub-license to sustain this particular ruling, unless I'm missing something, it would seem to still follow that if wherever they gave permission there was a sub-license, then the permission issue is still a problem for you, even under the sub-license rubric. I don't think that's right, Your Honor, because... So then stay with that. Then you must be saying that there could be a scenario on these facts where Sylvania indisputably gave permission to its vendor to use the photographs, and yet a jury could find that they didn't have a sub-license, even accepting the arbitrator's ruling and the court's ruling that the attribution term was not a condition. Yes, Your Honor, and I would direct the court to evidence that Sylvania knew very well that it needed to take certain steps in order to create a valid sub-license. But that's Sylvania. So you've got a bone to pick with Sylvania, which I understand you get a lot of meat off. But how does that... I'm the seller here. I've asked them for permission. I'm not going to use them unless Sylvania gives me permission. Sylvania gives them. Let's assume they'd said, and you have our permission. Would that not be a sub-license? That would be a bit of a different case because the question here is... Well, I'm not interested in whether it would be a different case. I'm interested in whether it would be a sub-license. And if it is, then how is this different? If it's not, why not? The rubric there would be an express oral license, which is somewhat different. And it would be, I think, likelier in that case that the parties had entered into a valid oral sub-license. But that's not what the record is here. The record's clear, and the district court found that there was no oral or otherwise expressed grant of permission or a sub-license. So you're saying you could do everything in the world that would possibly manifest permission, maybe even, I don't know, nodding your head, but if you don't say the word, I permit you, then there isn't a sub-license? So this question relates more to my first point, which is whether or not an implied sub-license in the copyright context is legally possible. I would argue that for the reasons that I briefed... But those reasons just looked at the reasons for an implied license from the creator to someone who worked with them. And, of course, the standards there are going to be different than in another situation because you've got an owner-in-ones, you have an owner-focused standard. I don't see anything in your brief that would say, other than that mechanistic attempt to apply our rule in our prior case to this different situation, you wouldn't allow a sub-license to be confirmed by the types of ways of manifesting agreement that would confirm any other contract. Well, I think there are good policy reasons in the Copyright Act for, as this Court has just said on a couple of different occasions, limiting implied transfers of non-exclusive copyright licenses to narrow circumstances. Yeah, sure, but that's not this case. Your client used the broadest possible language in granting rights to Sylvania. We're not in a different situation than that. Had your client wanted to restrict Sylvania, you could have come up with different language. Indeed, you could have come up with all of the conditions you're now arguing to us that we should retroactively impose. We'll hear from the other side. You've reserved some time. Thank you. Please, the Court, good morning. My name is Virginia Snell, and I'm representing Orgel. The Court clearly from the questions understands the importance of that PIC agreement, the PIC-Sylvania agreement, and the breadth of the license and the definition of use. And it does talk about freely permit and sub-license. Well, I'm not so sure that everyone on the Court has a full understanding. Maybe exclude me. Why aren't we talking about or why are we the only ones talking about permit and everybody else is talking about some hoary concept of sub-licenses? Why wasn't it brought up? It was brought up. There were two phases of summary judgment. In 2015, the Judge Saris found an implied license, and the fight thereafter that was over the scope. When the lawsuit was filed, Sylvania and Orgel entered into a confirmatory sub-license because there was this contention that there had to be an express sub-license. We never thought so. Sylvania never thought so. And the arbitrators down the road in 2017 said, you're right, it can be implied. The contract, the PIC-OCI licensing agreement, it includes almost every verb that you could think of. I mean, sub-license, permit. And the arbitration that went on for 12 weeks, hundreds of exhibits, expert witnesses, looked at all of the allegedly unauthorized uses of these photographs of light bulbs and determined that implied sub-license was the way Sylvania was doing business. That's just what they called it. But the way the industry works, and Dennis Sills, this is quoted a lot in our brief, but he was the person at Orgel who was on the phone, online, dealing with Sylvania. And at the time, Orgel had like 1,000 Sylvania products, some of these light bulbs, and they were in constant contact. And Dennis said, even before he started in 1998, there was this long-standing business relationship between Sylvania and Orgel. And during this arbitration, all the evidence that came out, and the arbitrator in his 87-page award that's in the joint appendix, he goes through the negotiations, and he goes through how everybody understood going to this deal that Sylvania wanted to be able to use those images any way that it could. And it had these customers. Orgel, obviously, was a big customer. It's just, I guess, the issue that seemed to be coming up was the impossibility of the sub-license. And it can't be impossible if you entered into a contract allowing it. The award itself says that that's what the contract resulted in, implied sub-licensing. And in the second round of summary judgment, the award was the focus of the district court. The judge had already found an implied license. And then, because these copyright notice and attribution provisions were simply claims for breach of contract against Sylvania because the arbitrator held that, as a matter of law, Pick had no copyright claim, just breach of contract for which it recovered something like $9 million. I think one of the issues is if the permit line of inquiry is not simply a way of illustrating why there's a sub-license, but is rather an alternative agreement to establishing Orgel's rights even if there is not a sub-license, then the question would be, was that alternative argument the focus or the basis of the decision below? Permission and implied sub-licensing, I mean, I think everybody thought they were talking about the same thing. Then that's the first one. So you're not riding on an alternative argument that even if there was no sub-license, permit means something different than sub-license and there was a permit. Yes, yes, Your Honor. And in the context... You say we wouldn't need to reach that issue because even if you think of it in sub-license terms, there's no summary judgment issue left. The district court was correct to enter summary judgment in sub-license terms. Correct, correct. Sub-licensing and permission. I know I've heard, and I don't know if it will come up on rebuttal, but there of course was ample evidence in the record about Sylvania's intent. Sylvania did try to intervene in our case. The PIC had filed some 30 copyright cases in the Massachusetts district courts and Sylvania tried to intervene and explained its interest in, you know, I guess in supporting the relationship that it had with Ordale, but the judge thought that that was untimely and indicated during the hearing, this was around January 13, 2016, that she was going to let Sylvania intervene in other cases and in fact in other cases that were consolidated before Judge Young, those were the ones that went to arbitration. How do you respond to PIC's argument that in the area, as contrasted with the area of contracts, in the area of copyright agreements and contracts, whether it's permission or sub-license, we should require there be some express manifestation of what we call a license or permit. In other words, in order to reduce uncertainty and lack of predictability and ascertainability of who owns intellectual property rights in that area. So they're basically saying, as I understand their argument, that we can't justify contract standards, we need to have this, we need to favor express provisions more than we would in contract law. That would be, the certainty argument and predictability argument makes no sense to me in the context of, especially this dispute, but maybe even generally, but I'll focus on this one. PIC has said in its brief that oral sub-licenses are okay. So if oral is okay, I mean implied by conduct should be okay. And you get your certainty and predictability by having a very good relationship, in this case, between PIC and Sylvania. That's your certainty and predictability. And I think that the owner is protected, just as we can see in this case, when the owner recovers that kind of money in arbitration, when the Sylvania party doesn't do the right thing. But it isn't when it was undisputed in the arbitration that Sylvania didn't tell any of its customers about the copyright license, and Orville and others just wasn't aware of it. But of course, what the relationship that Orville has comes from Sylvania, and there's ample evidence in the record that Sylvania gave its permission and consent. And while lawyers, we might call it a sub-license, Dennis Stills would say, permission in more ways than I can count, in addition to the confirmatory sub-license that was entered into. And I know on that point, they do cite one case with a proposition that that should not be valid, but that had to do with an owner, not this kind of transfer. It's the Davis case, and it's distinguishable. If there aren't any more questions? No, thank you. Thank you. So I'd like to begin by directing to the court to some evidence that, on the assumption that Sylvania and Orville, in fact, had to assent to the terms of a sub-license agreement, conferring a sub-license that picks copyrights, a jury could infer reasonably that that mutual assent did not occur. And first, I would direct the court to Sylvania's internal policies showing that it knew that it had a policy of granting a permission form, and it did not, undisputedly, did not give Orville any kind of permission form. We could argue to the jury that that shows if they had intended to confer a sub-license, they would have done that and didn't. The permission forms are in the record as well. And I think it's also important to keep in mind would that help you if there was no evidence that Orville knew of the existence of those forms? In other words, I understand your argument. Your argument is that, hey, if a company has these written forms that it uses that covers everything, and that company knows and usually uses that, and the other guy knows they've got those forms, we're going to have a raised eyebrow when the other guy says, oh, I had an oral agreement. But that requires some knowledge on behalf of Orville. So if Orville doesn't know about that contract, then how do you, about those written contracts, how do you construct a manifestation-of-intent consent argument? Well, I think it is a matter of Sylvania's intent, not Orville's intent. I mean, I think that if Sylvania has a... But all we're actually concerned about is manifested intent as between the parties. We're not concerned. A contract law or a copyright law doesn't look with unstated, silent intent. You're right, Your Honor, and I think that Sylvania's failure to use a form that it had and knew it should use is an objective manifestation. It shows the absence of an objective manifestation that was at their fingertips that they could have used and they knew they should use, but they didn't. And I'd like to add sort of an alternative explanation for Sylvania's conduct other than intent to confer a copyright sublicense, which is, frankly, careless management of Pick's copyrighted photos. The Arbitrator's Award, for example, which Orville has relied on throughout, goes on at length. This is in our appendix, pages 648 through 654, about how Sylvania simply failed to manage Pick's copyrighted info, did not properly label photos when it took them in, did not properly manage who had access to them, who could distribute them to dealers. And so... How does that help you? That doesn't... How does that help you?  on the part of Sylvania not to give permission to Orville. It may show that they were horribly negligent, but I don't see how it helps you on evidence about Sylvania had no intent to permit Orville to have a sublicense. I think the question is somewhat... Put a somewhat finer point on the issue, which is intent to confer downstream a sublicense to use Pick's photos. And I think if the jury could infer that instead of intending, knowing and understanding that the photos were copyrighted and distributing them, delivering them with an intent to confer a sublicense, instead of that, what they did was act without regard to the copyrights at all and send the photos to Orville carelessly, that would negate an intent to grant a sublicense. A positive intent. Yes, Your Honor, which I believe is required. Okay, thank you. Anything else besides those two points on showing or not showing assent? No, Your Honor. Okay, thank you.